USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED 10/20/11

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
Aaron Adler, et al.,                 :
                                     :
                    Plaintiffs,      :
                                     :    09 Civ. 08877 (DLC)(THK)
          -against-                  :
                                     :
                                     :    MEMORANDUM OPINION
Bruce Raynor, et al.,                :       AND ORDER
                                     :
                                     :
                    Defendants.      :
------------------------------------X
```

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

This case is one of several brought in this Court arising out of the long and contentious power struggle between the members and leadership of various successor unions to the International Ladies Garment Workers Union ("ILGWU").[1] As various successor unions formed and then disbanded, ownership of the assets, and responsibility for the obligations, of the union were disputed.

---

[1] Plaintiffs in this case were members and officials of the International Ladies Garment Workers' Union ("ILGWU"), to which UNITE was the successor union, formed when the ILGWU merged with the Amalgamated Clothing and Textile Union in 1995. (See First Amended Complaint ¶¶ 11, 32.) In 2004, UNITE, led by Defendant Bruce Raynor, joined with the Hotel Employees International Union ("HERE") to create UNITE HERE. The arrangement did not last long, and in 2005, a large portion of UNITE HERE's membership left to form Workers United. Defendant Edgar Romney, who had been an official with UNITE HERE, became president of Workers United. One of the contentious issues in Workers United's split with UNITE HERE was control over Amalgamated Bank, one of the Defendants in this case.

The Complaint in the instant matter, brought under the Employee Retirement Income Security Act ("ERISA"), alleged that the administrators of two pension plans, the UNITE HERE Staff Retirement Plan, and the ILGWU Death Benefit Plan ("Plans"), breached their fiduciary duties to the Plans through unlawful investments with other Defendants. Specifically, Plaintiffs alleged that Defendants Bruce Raynor, formerly President of UNITE HERE and Chairman of the Board of the Amalgamated Life Insurance Company ("ALICO"), and Edgar Romney, formerly Secretary-Treasurer of UNITE HERE and Board Secretary and Treasure of ALICO,[2] controlled several Defendant corporations, including Amalgamated Bank[3] ("Amalgamated" or "Bank"), and used these corporations to engage in transactions prohibited under ERISA. Plaintiffs further alleged that Herbert Ricklin, the independent fiduciary of the Plans, was in fact under the aegis of Raynor and Romney, and "rubber-stamped" their self-dealing transactions, which invested large portions of the Plans' capital with various Amalgamated funds. Plaintiffs alleged that some of these investments were

---

[2] ALICO is itself a subsidiary of the ALICO Services Corporation ("ASC"), which is also the holding company for United Fund Administrators, Alicare Medical Management, and Alicare.

[3] Ownership of the Bank is disputed between UNITE HERE and Workers United. See supra at n.1. Plaintiffs alleged that Raynor and Romney, with Workers United, exercised effective control over the Bank.

prohibited, and all were imprudent.

The Complaint also alleged that Raynor and Romney created a "de facto single entity," consisting of Workers United, the Bank, the Plans, and ASC. This single entity, according to Plaintiffs, had the goal of maximizing the Bank's and ASC's profit. The Complaint further alleged that by choosing Herbert Ricklin as the independent fiduciary, Raynor and Romney effectively caused the Plans to sign disadvantageous contracts with the Bank and ASC, which led to excessive interest payments and non-diversified holdings for the Plans. Plaintiffs also alleged that Raynor and Romney made a variety of false statements in required annual reports about their relationship to the Bank, that Defendant Michael Hirsch refused to turn over documents concerning these links, and that Mr. Ricklin failed to properly research the investments made with the Bank.

Plaintiffs claimed that the effect of the alleged over-investment in poorly-researched investments for self-dealing purposes was to reduce the funded percentage of one of the Plans to below 80%, which was therefore "endangered" under the terms of ERISA. Plaintiffs also characterized the fees paid to Ricklin for his service as independent fiduciary as improper, since he received fees from several Union Pension Plans, and was therefore not permitted to market the Bank's offerings to all of them

simultaneously. There were also allegations that Defendant Hirsch did not disclose his relationship to the Bank.

On April 25, 2011, the District Court (Hon. Denise L. Cote) approved a settlement agreement between the parties. By the terms of that agreement, Mr. Ricklin resigned as independent fiduciary and was replaced by Jonathan Axelrod. In addition, the new independent fiduciary agreed to "maintain such documents as required by law," and to adhere to various reporting requirements about the Bank and the fiduciary's investments in the Bank. Finally, the parties agreed to submit the issue of Plaintiffs' claim to attorneys' fees to this Court.

Plaintiffs now seek attorneys' fees in the amount of $1,735,442.82, for 2483.79 hours of work, under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). For the reasons set forth in this Opinion, Plaintiffs' request for attorneys' fees is denied.

## DISCUSSION

ERISA states that: "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has ruled that attorneys' fees may be awarded "as long as the fee claimant has achieved some degree of success on the merits." Hardt v. Reliance Standard Life

4

Ins. Co., 560 U.S. ---, 130 S.Ct. 2149, 2152 (2010)(internal quotation and citation omitted). Plaintiffs contend that the removal of Ricklin as independent fiduciary, as well as the reporting requirements of the settlement agreement, constitute success on the merits, while Defendants contend that these represent a "trivial success."

As the Supreme Court stated:

> "[a] claimant does not satisfy [the some degree of success] requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation a success without conducting a lengthy inquiry into the question of whether a particular party's success was substantial, or occurred on a central issue."

Id. at 2158 (internal quotations, citations, and alterations omitted).

Since the Hardt decision was issued, the Second Circuit has not given further definition to what minimum amount of success constitutes "some degree of success on the merits." The cases that have come before the Circuit have been relatively easy decisions under the Hardt standard, insofar as they addressed instances where it was obvious whether the side seeking fees had been successful. See, e.g., Toussaint v. JJ Weiser, Inc., 648 F.3d 108, 110 (2d Cir. 2011) ("[i]n any event, there is no dispute that Defendants achieved both prevailing party status and some degree of success on

5

the merits in this case because the district court granted summary judgment in their favor and we affirmed.")(emphasis added).[4]

Plaintiffs claim that they "obtained a settlement achieving virtually all of the relief they sought in this action," (Pls.' Mem. at 2), yet even a cursory examination of their Complaint suggests otherwise. The thrust of the Complaint is that Defendants breached their fiduciary duties by engaging in prohibited and

---

[4] In another Second Circuit case, the court found no success on the merits when the party seeking attorneys' fees had lost his case. See Katzenberg v. Lazzari, 406 Fed. App'x 559, 563 (2d Cir. 2011). Accord Kelly v. Handy & Harman, 406 Fed. App'x 538 (2d Cir. 2011). Other circuits have issued similar decisions. As in Toussaint, the Fourth Circuit found some degree of success when the district court had granted a motion for summary judgment. See Williams v. Metropolitan Life Ins. Co., 609 F.3d 622, 634-35 (4th Cir. 2010); see also Lincoln Financial Co. v. Metropolitan Life Ins. Co., 2011 WL 2391602 at *5 (5th Cir. June 15, 2011) (same) The Seventh Circuit found that "a reversal of the administrative denial of benefits, a remand for further proceedings involving a different controlling document, and the imposition of a statutory penalty against the Defendants" met the standard. Huss v. IBM Medical and Dental Plan, 418 Fed. App'x 498, 512 (7th Cir. 2011). See also Wagner v. Ciba Corp., 743 F. Supp. 2d 701, 718 (S.D. Ohio 2010)(denying attorneys' fees where plaintiff had failed to succeed on any claims). Cf. McQueary v. Conway, 614 F.3d 591, 601 (6th Cir. 2010)(citing Hardt as support for denying prevailing-party status to a party who obtained a preliminary injunction). Similarly, the one case in the Southern District of New York that most squarely addresses the question of what level of success meets the threshold standard is inapposite, as the plaintiff in that case recovered damages. See Taafe v. Life Ins. Co. of North America, 769 F. Supp. 2d 530, 538 (S.D.N.Y. 2011). The Taafe decision did, however, contain some discussion of what constituted the "merits" of the case, deciding that the plaintiff had achieved success on the merits when it obtained the relief it sought in the complaint. Id. at 542.

unsound financial transactions because, for example, Amalgamated Bank had been selected as a service provider to the benefit plans; Amalgamated Bank investment products had been impermissibly selected by the fiduciary Defendants; the Bank received excessive and unreasonable fees; and there had been a failure to diversify the investments of the Plans. A much less significant claim, asserted only against Hirsch and ALICO, is that they had failed to provide Plaintiffs with documents they were entitled to under ERISA. (See Am. Compl. Second Cause of Action.) Plaintiffs sought a declaratory judgment against numerous parties, including Herbert Ricklin; "[a]n Injunction and Order compelling Defendants to make good ... all losses"; the imposition of a constructive trust; an injunction against Defendant Workers United from exercising control of the Plans; an injunction to appoint an independent fiduciary to manage the Plans; an audit of all contracts between the Plans and Amalgamated Bank; restitution for unjust enrichment; disgorgement of Defendants' profits; injunctions against various Defendants from further violations of ERISA's provisions; the removal of Herbert Ricklin as fiduciary of the Staff Retirement Plan; and monetary damages.

The Settlement Agreement, however, includes only three substantive terms: the resignation of Herbert Ricklin as the independent fiduciary; a commitment to comply with the record-

keeping requirements of the Prohibited Transaction Exemption ("PTE"); and a commitment to make certain documents available to Plan participants. As to the removal of Mr. Ricklin, he confirms that the lawsuit was the reason for his resignation, although he denies that his resignation was due to the merits of Plaintiffs' allegations. (See Defs.' Mem. at 6 n.3; Ricklin Decl. ¶ 16.) Rather, he contends that being named as a defendant in this litigation jeopardized his ability to serve as an independent fiduciary for other funds, which he does regularly, and thus, threatened his livelihood. Regardless of his reasons for resigning, in the context of this case, this is a trivial victory. The Complaint alleges that Mr. Ricklin was not truly independent, but this only matters to the extent that he engaged in prohibited, disadvantageous, or otherwise improper transactions. And there has been no showing of prohibited transactions, no agreement to alter any investments, and no admission of non-independence. In other words, Plaintiffs' actionable reasons for wanting to remove Mr. Ricklin have not been demonstrated. The Court does not doubt Plaintiffs' sincerity in wanting to replace Mr. Ricklin, but it cannot conclude that merely doing so constitutes more than trivial success.

The evidence that Plaintiffs' counsel marshals in their Reply Memorandum does not support a contrary conclusion. For instance,

Plaintiffs have submitted several declarations regarding Plaintiffs' motivation for the lawsuit. (See Sigman Decl. Ex. A.) In Murray Kaner's declaration, however, Mr. Kaner does not mention removal of Mr. Ricklin as a concern, let alone as a primary goal of the litigation. The same is true for the other declarations filed by Plaintiffs. These affidavits provide scant support for the arguments made in Plaintiffs' original memorandum in support of their request for attorneys' fees.

The other terms of the settlement, requiring compliance with document retention and production policies,[5] are best characterized as procedural devices. They add no duty beyond what is already required by law, except for a somewhat modest requirement for written reports.[6] In other words, they achieve no real substantive

---

[5] The parties disagree about the extent to which the PTE requirements in particular should be considered success on the merits. Defendants insist that they have been in compliance throughout the relevant period. (See, e.g., Defs.' Mem. at 12.) As a technical matter, the dispute is that Plaintiffs claim that Defendants failed to report prohibited transactions, while Defendants claim that there were no prohibited transactions, and thus, there was nothing to report. In any event, without a finding of culpability, this Court cannot state that Defendants were not in compliance with the PTE reporting requirements, and thus, this provision of the settlement does not meet the Hardt success standard.

[6] The Settlement Agreement requires that the Bank create a "Periodic Report" on at least a quarterly schedule, and provide that to the Independent Fiduciary, as well as provide that report at least annually to the Boards of Trustees of the retirement plans. (See Settlement Agreement at 4-5.)

success, but instead merely add a minor procedural mechanism through which Plaintiffs might affix liability for future improprieties. Given the expansive nature of Plaintiffs' initial prayer for relief, the acceptance of these terms, without any monetary damages, permanent injunctions, divestiture of purportedly improper investments, admissions of culpability, or rescission of contracts, can hardly be described as the kind of success necessary to meet the standard in Hardt.[7]

The Court finds that the terms of the Settlement Agreement do not meet the standard of "some degree of success on the merits." Based on what was alleged and what has been achieved, it is apparent that this action was less about purported breaches of fiduciary duty and primarily a continuation of the turf war between various factions of the unions. Therefore, Plaintiffs are not entitled to attorneys' fees.

But even if Plaintiffs had met the Hardt threshold, this Court would, in its discretion, still deny their request for fees. Using the approach to attorneys' fees sanctioned in Hardt, a court may,

---

[7] Plaintiffs do cite a Northen District of Illinois case for the proposition that recovery of monetary damages is not a necessary condition of the Hardt standard. See Young v. Verizon's Bell Atlantic Cash Balance Plan, 748 F. Supp. 2d 903, 910 (N.D. Ill. 2010). In this action, however, Plaintiffs not only failed to secure monetary damages, but also failed to realize the vast majority of their initial demands.

10

at its discretion, apply the five-prong test provided in Chambless v. Masters, Mates, & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987). See Hardt, 130 S.Ct. at 2150 n.8; Toussaint, 648 F.3d at 110 ("[a] court may apply — but is not required to apply — the Chambless factors in channeling [its] discretion when awarding fees under § 1132(g)(1).")(internal quotations omitted, alteration in original).[8] The five factors are:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

Chambless, 815 F.2d at 871. Considering each of these in turn, this Court does not find adequate grounds upon which to predicate attorneys' fees.

Plaintiffs, discussing the first factor, state that "[a]s for

---

[8] Even in circuits that have read Hardt's requirement of "some degree of success on the merits" extremely liberally, district courts still retain discretion on the ultimate question of whether or not to award fees. See, e.g., Loomis v. Exelon Corp, --- F.3d ---, 2011 WL 3890453 at *7 (7th Cir. Sept. 6, 2011) ("[E]ven the ultimate loser could receive ... attorneys' fees and costs, if on the way to defeat the litigant won a skirmish that conferred some legal benefit ... Both the rule and the statute give the district court judge discretion to decide whether an award of costs is appropriate.").

11

bad faith on the part of the Defendants ... [this] factor [is] at worst neutral ... " (Pls.' Mem. at 14), and make no other substantiated, affirmative arguments for a finding of bad faith. Instead, they merely assert that Defendants must have settled because of the merits of Plaintiffs' case and that Plaintiffs had to seek redress in court because Defendants did not comply with an earlier document request. (See id. at 14-15.) Neither of these is sufficient for a showing of bad faith. Defendants have not admitted any wrong-doing, and there is no basis for the Court to speculate on their motivation for settlement; given the very limited terms of the settlement, however, which for the most part, require them to comply with the reporting and record-keeping mandates of existing regulations, it is reasonable to surmise that there was no reason to continue a prolonged and costly litigation.

The second Chambless factor is "the ability of the offending party to satisfy an award of attorney's fees." Chambless, 815 F.2d at 871. Plaintiffs assert that Defendants would have no trouble satisfying the award (see Pls.' Mem. at 14), and while they make no affirmative showing of this fact, Defendants do not make any serious effort to deny that they could afford to pay attorneys' fees. Therefore, the Court finds that the second factor slightly favors Plaintiffs. See Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 47 (2d Cir. 2009) (affirming the district court's finding

12

that the second factor favored a plaintiff when defendant had not denied its ability to pay).

The third factor, deterrence, does not favor either Plaintiffs or Defendants. Imposition of attorneys' fees is likely to discourage potential future defendants from certain kinds of behavior, and refusal to award them might discourage plaintiffs' firms from bringing ERISA suits. But there are two significant limitations on how much weight to accord the possible deterrent value in the instant case. First, there has been no admission or showing of wrong-doing, either generally or as to specific acts by any of the Defendants, so it is unclear exactly what behavior would be deterred. See Lauder v. First Unum Life Ins. Co., 284 F.3d 375, 383 (2d Cir. 2002)("The findings on the second and third factors seem unremarkable, and therefore neutral, to us, especially because the district court did not specify what conduct it thought would be deterred by the award."). Second, the major victory claimed by Plaintiffs is Mr. Ricklin's resignation as independent fiduciary. There has been no finding of wrong-doing against Mr. Ricklin, and according to him, the litigation was interfering with his ability to serve as an independent fiduciary for other trust funds. Thus, being subject to litigation might discourage qualified people from serving as fiduciaries, or might discourage them from settling cases of this type. Cf. Noe v. UNUM Life Ins. Co. of America, No.

13

96 Civ. 0177(JSM), 1998 WL 80199 at *4 (S.D.N.Y. Feb. 24, 1998)("[A]n award of fees may encourage insurance companies to cooperate more fully with claimants, but it also might deter them from settling as UNUM has here." ), aff'd, 165 F.3d 14, 14 (2d Cir. 1998)("The district court found the third factor, deterrence, to be neutral. On the one hand, an award of fees might encourage UNUM to grant benefits more expeditiously in the future, but on the other hand, it might discourage it from settling cases as it did here.").

Under the fourth factor, the relative merits of the parties' positions, this Court finds Defendants' position somewhat stronger than Plaintiffs'. With respect to the major issues in this case, there is no requirement for divestiture of the investments with the Bank, nor any disgorgement of fees from the independent fiduciary. The express terms of the settlement itself include no "admission[s] or concession[s]" concerning the merits, liabilities, or wrong-doing. (Settlement Agreement at 3-4.) While both Plaintiffs and Defendants make numerous assertions about both the strengths of their respective positions and the weaknesses of their adversaries' positions, the parties themselves have agreed not to litigate this point, and, accordingly, there is no compelling reason for this Court to find that this factor favors either Plaintiffs or Defendants. But, to the extent that it does favor one side, Defendants have the stronger claim, as Plaintiffs have abandoned

the vast majority of their demands to achieve an extremely modest settlement.

The fifth factor, whether or not the decision confers a group benefit on the beneficiaries of the Plan, is met here. Plaintiffs include many members of the group, and to the extent that this settlement can be considered a benefit, it does benefit the group. But the benefits to the group at large, namely, the resignation of an independent fiduciary who was displeasing to Plaintiffs, and the record-keeping and inspection terms of the Settlement, are not such substantial benefits that this Court is prepared to award fees solely because of them. Even more importantly, at least some part of the payment of the fees would come out of union funds or pension plan funds; the group that would purportedly receive benefits from the settlement would also be the group paying the fees. (See Defs.' Mem. at 15-16.)

In examining these factors, this Court finds that the Plaintiffs have demonstrated that Defendants have the ability to pay, and that there is some, albeit minor, group benefit from the settlement. While no one Chambless factor is dispositive, the first and fourth are particularly important. See Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 48 (2d Cir. 2009)("[a]nd while the degree of culpability and the relative merits 'are not dispositive under the [Chambless] five-factor test,' they do 'weigh heavily.'"

15

(quoting Anita Foundations, Inc. v. ILGWU National Retirement Fund, 902 F.2d 185, 189 (2d Cir.1990)(alteration in original)).

Balancing the group benefit and ability to pay against the absence of culpability or bad faith, the lack of deterrent value to an award, and Defendants' advantage on the relative merits of the parties' positions, the Court concludes, in its discretion, that an award of attorneys' fees would be inappropriate here. See Leyda v. AlliedSignal, Inc., 322 F.3d 199, 210-11 (2d Cir. 2003)(affirming a district court's refusal to award fees where the plaintiff had demonstrated that the defendant could pay and that there had been "a minimal common benefit," but defendant's actions "were not unreasonable and ... the resolution of the case was close.") (quoting the district court decision).

Finally, even if the Court had concluded that Plaintiffs are entitled to attorneys' fees, it would not grant them on the basis of the fee application. The fees the Plaintiffs' counsel seeks are excessive in the extreme. Plaintiffs seek $1,735,442.82 for 2483.79 hours of work. As Defendants point out, in the Levin action, Levin et al. v. Raynor et al., 03 Civ. 4697 (GBD)(THK), where the plaintiffs were represented by the same counsel that represents Plaintiffs in this action, the attorneys' fees agreed upon were $1,350,000.00. In that matter, the plaintiffs secured approximately $4,000,000.00 as part of the settlement, which took

16

over seven years of litigation to accomplish. Here, Plaintiffs are receiving no damages, after less than two years of litigation, and are seeking more substantial attorneys' fees. By their own admission, many of the lawyers for Plaintiffs are seeking compensation rates well in excess of their typical hourly rates. (Compare Pls.' Mem. at 2 with id. at 23-24.) The normal rates for their work are between $250 and $600 per hour, yet their total blended average is $699 per hour. Furthermore, the time purportedly expended is nothing short of breathtaking. For example, between the various attorneys, they claim to have spent 764 hours on researching and drafting the Complaint. After Defendants filed a Motion to Dismiss, Plaintiffs counsel spent 145 additional hours amending the Complaint. This claim is simply unreasonable.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for attorneys' fees is denied.

SO ORDERED.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: October 20, 2011
       New York, New York